IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| D.S., individually and on behalf of her minor child, J.B., | ) ) ) ) | CIVIL 11-00161 LEK-KSC |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION and KATHRYN MATAYOSHI, in her official capacity as Acting Superintendent of the Hawaii Public Schools, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER AFFIRMING HEARINGS OFFICER'S FEBRUARY 7, 2011 DECISION

Before the Court is an appeal by Plaintiff D.S. ("Mother"), individually and on behalf of her minor child, J.B. (collectively "Plaintiffs"), of the Administrative Hearings Officer's ("Hearings Officer") February 7, 2011 Findings of Fact, Conclusions of Law and Decision ("Decision") dismissing Plaintiffs' Request for Impartial Hearing.[1]  Plaintiffs filed their Opening Brief on September 12, 2011.  Defendants Kathryn Matayoshi, in her official capacity as Superintendent of the Hawai'i Public Schools, and the Department of Education, State of Hawai'i (collectively "the DOE" or "Defendants") filed

_____

[1] The Decision is Exhibit 11 to the Administrative Record on Appeal ("ROA"), at 58-72.

their Answering Brief on October 24, 2011.  The Court heard oral argument in this matter on December 5, 2011.  Appearing on behalf of Plaintiffs was Keith Peck, Esq., and appearing on behalf of Defendants was Monica Morris, Esq.  After careful consideration of the parties' briefs, the arguments of counsel, and the relevant legal authority, the Decision is HEREBY AFFIRMED.

## **BACKGROUND**

### **I.   Factual and Administrative Background**

J.B. ("Student"), is fourteen years old, and is eligible to receive special education and related services under the eligibility category of autism.  Student's home school is Kalama Intermediate, which he has not attended.  During the 2009-10 school year, he attended eighth grade at Horizons Academy, pursuant to a prior Hearings Officer's order following a due process hearing.  [Decision at 4.]

On August 16, 2010, Plaintiffs filed a Request for Impartial Due Process Hearing ("RIH").  [ROA at 1-6.]  The RIH asserts that the Individualized Education Program ("IEP"), dated May 21, 2010, which proposed transitioning Student to Kalama Intermediate, is flawed for the following reasons:

. . . .

b.   The IEP states that [Student] will have adult support, but it is unclear whether this is 1:1 adult support or if staff will be circulated[.]

c.   The service, lead and direct paraprofessional

is vague.  Are there any qualifications or
training required of the staff implementing
this service?  This statement is
insufficient.

. . . .

[Id. at 4-5.]

The RIH sought the following:

1.    Order that the DOE fund student's present
      placement during the pendency of this action;

2.    Find that the DOE violated student and
      parents (sic) rights and denied them FAPE;

3.    Award reimbursement to Petitioners for any
      educational and related programs incurred by
      his mother this school year.  He is presently
      at Horizons Academy;

4.    find that Petitioners are the prevailing
      party;

5.    award attorneys fees and costs in
      the prosecution of this and related
      matters; and,

6.    enter such other and appropriate relief
      as deemed just and necessary by this
      court.

[Id. at 5-6.]

The due process hearing convened on December 6 and 14,

2010.  [Decision at 3.]  The Hearings Officer filed the Decision

on February 7, 2011.  The Hearings Officer framed the issues

presented in the RIH as "[w]hether the May 21, 2010

Individualized Education Program ('IEP') offered student a Free

Appropriate Public Education ('FAPE')."  [Id. at 4.]

The Decision summarized the process for putting

together the May 21, 2010 IEP at issue.  [Id. at 4-8.]  The

Hearings Officer found, *inter alia*:

> 6.    On May 21, 2010, an IEP meeting was
> convened for Student.  According to the list of
> IEP meeting participants, Mother, the IEP Care
> Coordinator, BHS [Behavioral Health Specialist],
> and other DOE members of the IEP Team ("Team")
> attended the meeting.  No one from the Private
> School attended the meeting.  Petitioners' Exhibit
> "I" page 18 and Respondent's Exhibit "4" page JB
> 028.
> 7.    The purpose of the May 21, 2010 IEP
> meeting was to revise portions of Student's annual
> IEP that was developed on September 14, 2009.
> "Additional cueing (visual and/or verbal)" and a
> "Behavior Support Plan" ("BSP") were added to the
> Supplementary Aids and Services ("SAS") portion of
> the IEP and the term "adult support" replaced the
> term paraprofessional in the SAS.  TOP page 95;
> lines 11-15.
> 8.    The May 21, 2010 IEP continued to offer
> Student: (a) 1800 minutes of special education per
> week on a public intermediate school campus; (b)
> Specialized instruction throughout the school day
> (Math, Science, Social Studies, and English
> classes would be in a special education setting
> and two elective classes would be in the general
> education setting); (c) SAS - (1) 2250 minutes per
> week of adult support; (2) 720 minutes per quarter
> to lead and direct the paraprofessional; (3) an
> after school program; (4) speech-language and
> occupational therapy consultation; (5) frequent
> breaks; (6) a modified curriculum; (7) individual
> cuing (visual and/or verbal); (8) an individual
> testing setting; and (9) a BSP; and (d) Extended
> School Year ("ESY") services (here - summer
> school).  Petitioners' Exhibit "I" pages 16-17 and
> Respondent's Exhibit "4" pages JB 026-027.
> 9.    The clarification of services and
> supports section of the May 21, 2010 IEP stated,
> among other things, that: (a) Paraprofessional
> services were available for and to be provided to
> Student 10 minutes prior to the start of the
> school day, throughout the entire school day, 10
> minutes after the school day ended, and for 5
> hours per week during Student's after school

program.  Petitioners' Exhibit "I" page 16 and
Respondent's Exhibit "4" page JB 026.

     10.  Mother testified that, on Student's
previous IEP, the term "adult support" was
referred to as "one-to-one paraprofessional".
Mother understood what the term "one-to-one
paraprofessional" meant.  Mother stated there was
no clarification at the May 21, 2010 IEP meeting
of the training, qualifications, oversight or
anything else regarding Student's adult support.
Mother testified that she did not know who would
work with Student or what adult support meant.
TOP page 12; lines 22-25, page 13; lines 1-25, and
page 14; lines 8-9.

     11.  Mother testified that on Student's
previous IEP, the term "lead and direct
paraprofessional" was referred to as a "BISS" or
Behavior Instructional Support Specialist.  Mother
stated that on May 21, 2010, the Team never
discussed what this service was and who would
provide or oversee the provision of this service
to Student.  TOP page 14; lines 13-25 and page 15;
lines 1-6.

     . . . .

     13.  The IEP Care Coordinator testified that
the term "adult support" was discussed at the
May 21, 2010 IEP meeting.  Mother did not raise
any questions about the terms "adult support" or
"lead and direct paraprofessional" at the May 21,
2010 meeting.  TOP page 97; lines 7-9; page 99;
lines 3-8; and page 111; lines 16-25.

     14.  The BHS testified that at the May 21,
2010 IEP meeting the Team discussed that Student
required a paraprofessional in school to support
all of his learning activities, including his
social, communication, and safety needs.  In
addition, an individual to lead and direct the
paraprofessional was needed to provide the
paraprofessional with expertise and training as it
applied to Student's unique needs.  TOP page 45;
lines 14-25; page 54; lines 2-10; and page 72;
lines 2-6.

     15.  The BHS further testified that Mother
did not raise the terms "adult support" or "lead
and direct paraprofessional" as concerns during
the meeting.  At the meeting, DOE Team members
went over a draft IEP line by line and solicited
input and/or agreement or disagreement from

Mother.  TOP page 54; lines 13-21; page 75; lines
10-15; page 76; lines 5-16; and page 77; lines
2-16.

[Id. at 4-6 (footnotes omitted).]

Ultimately, the Hearings Officer concluded as follows:

At the May 21, 2010 IEP meeting, the Team,
including Mother discussed the draft IEP developed
by the IEP Care Coordinator, line by line.  At
each juncture of the IEP development process,
Mother's input, advice, agreement or disagreement
was solicited by DOE Team members.  Mother, an
equal member of the Team, was able to ask
questions, provide her input or express any
concerns she may have had regarding the IEP,
including the terms "adult support" and "lead and
direct paraprofessional".  According to the IEP
Care Coordinator, the term "adult support" was
discussed at the May 21, 2010 IEP meeting.  Mother
did not raise any questions regarding the terms
"adult support" or "lead and direct
paraprofessional".  Per the BHS, the Team also
discussed Student's need for a paraprofessional in
school to support all of his learning activities
(social, communication, and safety) and that an
individual was needed to lead and direct the
paraprofessional with expertise and training as it
applied to Student's unique needs.  The BHS
testified that Mother had no concerns with either
of these two terms during the IEP meeting.
Mother testified that, prior to the May 21,
2010 IEP meeting, she knew the term "adult
support" was referred to as a one-to-one
paraprofessional and the term "lead and direct
paraprofessional" was referred to as a Behavioral
Instruction Support Specialist or BISS.
Alternatively, Mother testified that there
was no discussion at the May 21, 2010 IEP meeting
regarding the training, qualifications, oversight
or anything about Student's adult support or what
the "lead and direct paraprofessional" service
was, who would provide the service to Student and
who would oversee the provision of this service to
Student.
. . . .
A preponderance of the evidence showed that

6

the draft IEP was discussed by the entire Team at the May 21, 2010 meeting. The evidence showed that: (a) the Team, in a line-by-line discussion of the IEP discussed the terms "adult support" and "lead and direct paraprofessional"; (b) Mother was an equal and able member of the IEP team; and (c) Mother is employed as an educational assistant at the Private School; a school for children with learning disabilities. The Hearings Officer finds Mother's testimony that the Team did not discuss anything about Student's adult support services and did not discuss the service "lead and direct paraprofessional", not credible.

First, the Team discussed the terms "adult support" and "lead and direct paraprofessional" in the SAS section and the clarification of services and supports section of the draft IEP. Second, Mother knew that prior to May 21, 2010, the term for "adult support" was "one-to-one paraprofessional" and the term for "lead and direct paraprofessional" was BISS. Based on Mother's job as an educational assistant for children with learning disabilities, her understanding of Student's needs, and her role as an equal member of the IEP team, there is no doubt in this Hearings Officer's mind that Mother understands what the terms "adult support" and "lead and direct paraprofessional" mean. As an active and able member of the Team and as a person who works with children with disabilities, Mother could have and should have voiced any questions she had about the terms "adult support" and "lead and direct paraprofessional". The DOE members of the IEP team are not responsible for figuring out every single question a parent may want to ask during an IEP meeting. How is the DOE supposed to intuitively know that Mother may have had questions about the terms "adult support" or "lead and direct paraprofessionals" if Mother raises no concerns or questions at the IEP meeting? It appears disingenuous on Mother's part to ask no questions or express any concerns at the IEP meeting regarding these two IEP terms, then subsequently bring a request for an impartial hearing on specific, discreet parts of the May 21, 2010 IEP, including two terms that could have been simply clarified at the IEP meeting. The evidence did not show that Mother was prevented in any way

from asking questions or fully participating in
the May 21, 2010 IEP meeting.
    Based on the foregoing, the Hearings Officer
finds that Petitioners did not prove this
allegation by a preponderance of the evidence.

[<u>Id.</u> at 13-14.]

The Hearings Officer concluded that Plaintiffs failed
to prove that the May 21, 2010 IEP denied Student a FAPE, and
dismissed the RIH. [<u>Id.</u> at 16.] The instant action followed.

## II. <u>Plaintiffs' Opening Brief</u>

Plaintiffs state that the only issue in this appeal is
"the vagueness of the language used to describe the supplemental
aides and services in the Student's IEP document." [Opening Br.
at 1-2.] Plaintiffs argue that Student was denied a FAPE because
the May 21, 2010 IEP identified Student's services as "adult
support," which is an insufficient definition for such services,
"given the unique needs of the student in question." [<u>Id.</u> at 2.]
Plaintiffs' central argument is that Student needed a "1:1 aide
all day," and that, "not defining the services as a 1:1 aide was
a denial of FAPE. When the IEP failed to reflect this agreement,
the IEP was **not** designed to ensure benefits and was substantively
flawed." [<u>Id.</u> (emphasis Plaintiffs').]

Plaintiffs cite <u>Hall v. Vance County Board of
Education</u>, 774 F.2d 629, 630 (4th Cir. 1985), for the proposition
that the failure to develop an IEP with the specificity required
by 20 U.S.C. § 1401(a)(19) is adequate grounds to find a denial

of FAPE.  [Id. at 4-6.]

    In conclusion, Plaintiffs seek reimbursement for the
private school tuition and related costs.

## III. **Defendants' Answering Brief**

    The DOE and asks the Court to affirm the Hearings
Officer's Decision.  It argues that, although Plaintiffs claim
that the Hearings Officer only addressed the procedural issues,
and not whether substantive violations occurred, the Hearings
Officer properly determined that Plaintiffs failed to prove this
issue and all other issues raised.  [Answering Br. at 4.]

    According to the DOE, the purpose of the May 21, 2010
IEP meeting was to revise certain parts of Student's annual IEP
that was developed on September 14, 2009.  [Id. at 7 (citing Tr:
Vol. 2, p. 92, lines 19-24; and p. 94, lines 11-15).]  At the
hearing, Mother stated that the IEP team did not discuss or
explain (1) what was meant by "adult support" and (2) what was
meant by "lead and direct paraprofessional."  [Id. (citing Tr:
Vol. I, pp. 13-14; and p. 15, lines 5-6).]  Two DOE witnesses,
who were members of Student's IEP team on May 21, 2010, testified
that: (1) Mother did not raise questions, concerns or objections
about the vagueness of the language or services to be provided
through "adult support" and "lead and direct paraprofessional";
(2) Mother in fact had a draft IEP at this meeting that clearly
detailed what services would be available through "adult support"

and "lead and direct paraprofessional"; (3) and that this draft
IEP was reviewed line by line by the IEP team. [Id. at 8.]

First, Student's IEP Care Coordinator, Karolyn Mossman
("IEP Care Coordinator"), a special education teacher since 1979
and Director of Kalama Intermediate's Special Education
Department for eight years, tested and observed Student at
Horizons Academy. [Id. (citing Tr: Vol. 2, p. 90, lines 17-24).]
The DOE states that the IEP Care Coordinator testified that the
terms "adult support" and "lead and direct paraprofessional" were
discussed at the May 21, 2010 meeting. [Id. (citing Tr: Vol. 2,
pp. 97-98).] Additionally, the term "adult support" was
described in the Clarification of Services portion of the draft
IEP as 2,250 minutes per week and to cover Student before school,
throughout the school day and for a period of time after school,
as well as at an after-school program. [Id. (citing Tr: Vol. 2,
pp. 96-99).] She also testified that, although the terminology
changed, the service was not a new service and the frequency of
2,250 minutes per week remained the same. [Id. (citing Tr:
Vol. 2, p. 97, lines 5-23).]

Second, the DOE cites the testimony of Audrey Malasnik,
the DOE BHS, who testified that, at the May 21, 2010 meeting, the
IEP team discussed that Student required a paraprofessional in
school for all learning activities and for social, communication,
and safety concerns. The IEP team also discussed that someone

10

would be needed to lead and direct the paraprofessional. [Id. at 11 (citing Tr: Vol. 2, p. 54, lines 2-10).] The BHS testified that Student's IEP team reviewed the draft IEP line by line, soliciting input and agreement from Mother, and Mother had no concerns. [Id. (citing Tr: Vol. 2, p. 54, lines 1-21).] The DOE argues that the BHS' testimony on these points is significant:

> Q. And can you read the first half of that paragraph?
> A. "Supplementary aids and services are to support [Student's] learning needs. A paraprofessional is needed for all learning activities for social, communication, and safety concerns. Someone to lead and direct the paraprofessional is needed to provide expert support and training around [Student's] unique needs."
> Q. Okay. Was that discussed at the May 21st, 2010 IEP meeting?
> A. Yes, it was.
> Q. And mom was present throughout that meeting?
> A. Yes.
> Q. Did mom at any point in time raise these two issues, these two points? The adult support and lead and direct paraprofessional, did she ever raise that as a concern or as an issue at the IEP meeting?
> A. She did not, no. Again, we went over the draft in detail line by line soliciting input from her and agreement. We modified many of the goals and objectives along the way and the services. And she had no concerns addressed at that point in either of those two areas.

[Id. at 11-12 (citing Tr: Vol. 2, p. 54, lines 1-21).]

The DOE argues that the Hearings Officer alone determines what the facts are and what weight, if any, should be given to the testimony of witnesses. That is, the

Hearings Officer bears the burden of determining weight and credibility.  It also argues that the record here provides factual support for the Hearings Officer's decision.  [Id. at 12-13.]  The DOE points to the Hearings Officer's conclusion that:

> It appears disingenuous on Mother's part to ask no questions or express any concerns at the IEP meeting regarding these two IEP terms, then subsequently bring a request for an impartial hearing on specific, discreet parts of the May 21, 2010 IEP, including two terms that could have been simply clarified at the IEP meeting.  The evidence did not show that Mother was prevented in any way from asking questions or fully participating in the May 21, 2010 IEP meeting.

[Id. at 13-14 (quoting ROA Ex. 11).]

**STANDARD**

## I.  **IDEA Overview**

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs."  Hoeft ex rel. Hoeft v. Tuscon Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310, 108 S. Ct. 592, 597, 98 L. Ed. 2d 686 (1988)).  It ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique

needs and prepare them for further education, employment,
and independent living[.]" 20 U.S.C. § 1400(d)(1)(A).

The IDEA defines FAPE as:

> special education and related services that –
> (A) have been provided at public expense,
> under public supervision and direction, and
> without charge;
> (B) meet the standards of the State
> educational agency;
> (C) include an appropriate preschool,
> elementary school, or secondary school
> education in the State involved; and
> (D) are provided in conformity with the
> individualized education program required
> under section 1414(d) of this title.

20 U.S.C. § 1401(9). To provide a FAPE in compliance with
the IDEA, a state educational agency receiving federal funds
must evaluate a student, determine whether that student is
eligible for special education, and formulate and implement
an IEP. See generally 20 U.S.C. § 1414. The IEP is to be
developed by an "IEP Team" composed of, *inter alia*, school
officials, parents, teachers and other persons knowledgeable
about the child. § 1414(d)(1)(B).

"Procedural flaws in the IEP process do not always
amount to the denial of a FAPE." L.M. v. Capistrano Unified
Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2009) (citations
omitted). Once a procedural violation of the IDEA is
identified, the court "must determine whether that violation
affected the substantive rights of the parent or child."
Id. (citations omitted). "[P]rocedural inadequacies that

result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE." Id. (alteration in original) (citations and quotation marks omitted).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education. J.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted). Rather, school districts are required to provide only a "'basic floor of opportunity.'" Id. (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 201 (1982)). The FAPE need only be "appropriately designed and implemented so as to convey [the] [s]tudent with a meaningful benefit." Id. at 433 (citations and quotation marks omitted).

If a parent disagrees with the contents of an IEP, the parent may challenge the contents thereof by demanding an administrative due process hearing to be conducted by the local or state educational agency. See 20 U.S.C. § 1415(b)(6), (f)(1)(A). Parents may also send their student to a private program and seek retroactive tuition reimbursement from the state. See Forest Grove Sch. Dist. v. T.A., 129 S. Ct. 2484, 2493, 2496 (2009) (citations

14

omitted).  Where parents unilaterally withdraw a child from public school, they "do so at their own financial risk." Id. at 2496 (citations and internal quotation marks omitted).  Parents challenging an IEP are entitled to reimbursement only if "a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act." Id. (citations and internal quotation marks omitted); see also 34 C.F.R. § 300.148(c).

## II.  Standard of Review

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the court –
>      (i) shall receive the records of the administrative proceedings;
>      (ii) shall hear additional evidence at the request of a party; and
>      (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 908 (9th Cir. 2009) (quoting Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)) (some citations omitted).

15

The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling. J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 438 (9th Cir. 2010) (citing Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" L.M., 556 F.3d at 908 (quoting Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995)). The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." Cnty. of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466-67 (9th Cir. 1996) (citation and quotation marks omitted)). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." Wartenberg, 59 F.3d at 891. "[T]he ultimate determination of whether an IEP was appropriate," however, "is reviewed de novo." A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist., 627 F.3d 773, 778 (9th Cir. 2010) (citing Wartenberg,

59 F.3d at 891).

A court's inquiry in reviewing IDEA administrative decisions is twofold:

> "First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?"  [Rowley, 458 U.S. at 206-07] (footnotes omitted).  "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more."  Id. at 207.

J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling.  Hood v. Encinitas Union Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted).  The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed.  J.W., 626 F.3d at 438 (citation omitted).

## DISCUSSION

As a general matter, the Court FINDS that the Hearings Officer's findings and conclusions are "thorough and careful" and therefore entitled to increased deference. See L.M., 556 F.3d at 908 (citation and internal quotation marks omitted).  The Decision set forth findings of fact and justified its conclusions of law with reference to the

17

factual record presented over the two-day hearing.  The
Hearings Officer summarized the testimony of the teachers,
therapists, and consultants involved in the process, and
created a detailed decision explaining her factual findings
and legal conclusions.  Accordingly, the Court affords
"substantial weight" to the Hearings Officer's Decision.
See Cnty. of San Diego, 93 F.3d at 1466-67.

Plaintiffs argue that Student was denied a FAPE
because the May 21, 2010 IEP identified his services as
"adult support," which is an insufficient definition for
such services, because Student needed a "1:1 aide all day,"
and that, "not defining the services as a 1:1 aide was a
denial of FAPE."  [Opening Br. at 1-2.]

First, the Court observes that Mother's testimony
that the IEP team did not discuss or explain (1) what was
meant by "adult support" and (2) what was meant by "lead and
direct paraprofessional," was contradicted by two DOE
witnesses who were members of Student's IEP team on May 21,
2010.  The Hearings Officer found the testimony of the DOE
employees on the subject to be credible, however, she stated
as follows with respect to Mother's testimony:

> A preponderance of the evidence showed
> that the draft IEP was discussed by the
> entire Team at the May 21, 2010 meeting.  The
> evidence showed that: (a) the Team, in a
> line-by-line discussion of the IEP discussed
> the terms "adult support" and "lead and

18

direct paraprofessional"; (b) Mother was an equal and able member of the IEP team; and (c) Mother is employed as an educational assistant at the Private School; a school for children with learning disabilities. The Hearings Officer finds Mother's testimony that the Team did not discuss anything about Student's adult support services and did not discuss the service "lead and direct paraprofessional", not credible.

First, the Team discussed the terms "adult support" and "lead and direct paraprofessional" in the SAS section and the clarification of services and supports section of the draft IEP. Second, Mother knew that prior to May 21,2010, the term for "adult support" was "one-to-one paraprofessional" and the term for "lead and direct paraprofessional" was BISS. Based on Mother's job as an educational assistant for children with learning disabilities, her understanding of Student's needs, and her role as an equal member of the IEP team, there is no doubt in this Hearings Officer's mind that Mother understands what the terms "adult support" and "lead and direct paraprofessional" mean.

[Decision at 13-14.]

The DOE IEP Care Coordinator and BHS testified that: (1) Mother did not raise questions, concerns or objections about the vagueness of the language or services to be provided through "adult support" and "lead and direct paraprofessional"; (2) Mother had a draft IEP at this meeting that clearly detailed what services would be available through "adult support" and "lead and direct paraprofessional"; (3) and that this draft IEP was reviewed line by line by the IEP team. The IEP Care Coordinator

testified that the term "paraprofessional" used in the
September 14, 2009 IEP was replaced with the term "adult
support" in the May 21, 2010 IEP.  The term "lead and direct
paraprofessional" was used in both the September 14, 2009
and May 21, 2010 IEPs.  [ROA, Tr. Vol. 2 (12/14/10), at 96.]
She further testified that the terms "adult support" and
"lead and direct paraprofessional" were discussed at the
May 21, 2010 meeting.  [Id. at 97-98.]  Additionally, the
term "adult support" was described in the Clarification of
Services portion of the draft IEP as 2,250 minutes per week
and to cover Student before school, throughout the school
day and for a period of time after school, as well as at an
after-school program.  [Id. at 96-99.]  She also testified
that, although the terminology changed, the service was not
a new service and the frequency of 2,250 minutes per week
remained the same.  [Id. at 97.]

        To the extent the Hearings Officer's weighing of
the evidence involved witness credibility, the Court gives
particular deference to the Hearings Officer, who received
live testimony and was in the best position to determine
issues of credibility.  See Amanda J. v. Clark County Sch.
Dist., 267 F.3d 877, 889 (9th Cir. 2001); L.I. v. Hawai'i,
Civil No. 10-00731 SOM/BMK, 2011 WL 6002623, at *4 (D.
Hawai'i Nov. 30, 2011) ("The Third Circuit has stated that

'special weight' is due when the hearings officer has heard live testimony and 'found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness,' and 'a District Court must accept the state agency's credibility determinations unless the nontestimonial, extrinsic evidence in the record would justify a contrary conclusion.") quoting L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 n.4 (3d Cir. 2006)).

Accordingly, the Court adopts the Hearings Officer's findings and conclusions that: (a) the IEP Team, in a line-by-line discussion of the IEP, discussed the terms "adult support" and "lead and direct paraprofessional"; (b) Mother was an equal and able member of the IEP team; (c) Mother is employed as an educational assistant at the Private School, a school for children with learning disabilities; and (d) Mother understood what the terms "adult support" and "lead and direct paraprofessional" meant. That is, Mother understood that the term "adult support" was referred to as a "one-to-one paraprofessional" and the term "lead and direct paraprofessional" was referred to as a "BISS."

Second, the Court concludes that Plaintiffs failed to meet their burden of establishing that not defining the services as a one-to-one aide was a denial of FAPE. The IEP

must include a statement of the special education and related services to be provided that will enable the child to advance toward her goals. 20 U.S.C. § 1414(d)(1)(A). Student's May 21, 2010 IEP identifies the special education services, the frequency and duration of such services, and, as set forth above, Mother understood that Student would be receiving services from a one-to-one paraprofessional, even though the DOE now uses the term "adult support." The IEP was reasonably calculated to provide educational benefits to Student. The record shows that this is not a case in which the services were completely undefined, "vague and indefinite," or "lacking sufficient specificity to adequately determine what supplementary aids and services might be necessary to carry out the IEP." Bend LaPine School Dist. v. K.H., No. Civ. 04-1468-AA, 2005 WL 1587241, at *10 (D. Or. June 2, 2005).

Although Plaintiffs are not satisfied with the DOE's offer of FAPE, an IEP need not conform to a parent's wishes in order to be sufficient or appropriate. See Shaw v. District of Columbia, 238 F. Supp. 2d 127, 139 (D.D.C. 2002) (stating that the IDEA does not provide for an "education . . . designed according to the parent's desires" (citation omitted)). The Court understands that, throughout the proceedings, Mother has sought, as all good parents do,

to secure the best services for her child.  The role of the district court in IDEA appeals, however, is not to determine whether an educational agency offered the best services, but whether the services offered confer the child with a meaningful benefit.  Plaintiffs have offered no law, and this Court is aware of none, stating that the IDEA requires more specificity in defining "adult support" and "lead and direct paraprofessional," under circumstances similar to these.  The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling, and here, Plaintiffs have not shown, by a preponderance of the evidence, that the Decision should be reversed.  See Hood, 486 F.3d at 1103; J.W., 626 F.3d at 438.

## CONCLUSION

On the basis of the foregoing, the Hearings Officer's November 10, 2010 Findings of Fact, Conclusions of Law and Decision is HEREBY AFFIRMED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 27, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**D.S., ET AL. V. STATE OF HAWAII, ET AL; CIVIL NO. 11-00161 LEK-KSC; ORDER AFFIRMING HEARINGS OFFICER'S FEBRUARY 7, 2011 DECISION**